IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION - STATE OF MISSOURI

| | |
|---|---|
| DEBORAH WOODS,<br>    Plaintiff | )<br>)<br>) Case No:  4:24CV-00868 |
| VS. | )<br>) |
| CITY OF ST.LOUIS, MISSOURI,<br>    Et al | )<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S REQUEST FOR RELIEF AND/OR NEW COURT-APPOINTED COUNSEL**

COMES NOW, Plaintiff Deborah Woods, filing pro se due to no indigent counsel currently working on this case effective December 2, 2024, and hereby requests this Court take note of the following relevant facts and consider an *appropriate* legal remedy and next steps given the circumstances -  including appointing new and hopefully ADA-informed "court appointed counsel" and in support of this Motion and Request herein states as follows:

1.)	Plaintiff is aware that attorney Javad Khazaeli has withdrawn from this case effective December 2, 2024 as per Plaintiff's own request that he do so on that date.

2.)	On the third of only three conversations with Plaintiff spanning four months,  a Zoom Conference was hosted by Mr. Khazaeili on November 27, 2024 wherein he abruptly announced he would simply withdraw from this case because of Plaintiff's refusal to abide by certain troubling commands from him.  Plaintiff's immediate instinctive response was ALARM - considering the looming Motion to Dismiss pending in this case with this Court. Consequently, Plaintiff Woods tried to appease Mr. Khazaeli by telling him she would consider agreeing to several arguably unlawful and disagreeable things that were not in her best interest for which he was asking of her

1

but which happened to serve Mr. Khazaeli mightily. Additionally, during this November Zoom, Mr. Khazaeli stated untruths or false statements nine (9) times to Plaintiff Woods. By this point, Plaintiff Woods is now well familiar with the lies that St. Louis lawyers are willing to tell themselves, their clients and the Court - so this came as no surprise because as the infamous Dr. Phil likes to quip: "This aint my first rodeo."

Nevertheless, such behavior is still unacceptable from any member of the Bar. If you cannot stand in truth before your clients and/or the Court - perhaps you should not be allowed to be a member at all.

Plaintiff Woods took the four (4) day holiday weekend to seek both legal counsel on this concerning matter as well as spiritual counsel. On the advice of counsel, and with no good options available to her at this juncture, Plaintiff wrote to Mr. Khazaeli on Monday morning, December 2, 2024 and requested that he withdraw from this case. This is obviously not the outcome Plaintiff had hoped for in August when the KW Law Firm was first assigned to this case. However, when you FINALLY realize the lawyer appointed to represent you is not actually on your side, is willing to lie to you and belligerently badger you to intimidate and coerce you as his "method" of lawyering - what other option is there?

3.) The reasons for this request for attorney Khazaeli to withdraw by Plaintiff are many but three of the larger issues were the following:

a) Khazaeli and Woods could not fundamentally agree on which case he would litigate on her behalf as her original filing with this Court has at least ten (10) possible causes of action against the defendants and is very complex and admittedly convoluted in conveyance in some areas of the original Complaint. But Plaintiff also indicated in that Complaint that the list of torts and intentional wrongs and unlawful behavior by defendants in that Complaint was not fully comprehensive- but was sufficient to express the merits of certain matters. Plaintiff Woods can only apologize for this "convoluted conveyance deficit" where it appears in her Complaint (and

2

Motions) as she was and is working pro se with a traumatically injured brain and blinding TBI headaches.  She asks this Court to trust that she is doing her level best on any given day;

 b) The lack of any substantive work done on Plaintiff's case by Khazaeli during the past four months while the deadline for dismissal was looming and the statute of limitations, for some actions, tolling in February 2025;

 c) Both a lack of ongoing communication during these four months but also – errors and problems in communicating with Mr. Khazaeli including issues regarding critical documents needed to properly initiate and litigate this case when he finally did communicate on only 3 occasions for "a few minutes" via Zoom.

4). Plaintiff realizes that pro bono counsel for the indigent assigned by this Court is a privilege and a gift and not something the Court always provides to the indigent appearing before this Court.  Plaintiff Woods assures this Court that she fully appreciates this consideration from this Court – especially given her many disabilities which prevent her from meaningfully representing herself.  She assures this Court she is never intentionally trying to be "disagreeable for funsies" but has found valid and troubling issues with both counsel assigned so far on this case.  If there is a Local Rule that states Plaintiff is not allowed to expect bare minimum representation levels and competence <without personal or professional conflicts existing therein> from this "pro bono lawyer program" with the Court, Plaintiff would like to review it or at least be made aware that she apparently waives all of her rights, her agency and her dignity when receiving pro bono counsel.

 Because Plaintiff Woods is now gravely concerned that the first assigned lawyer back in June 2024 by this Court was very young and inexplicably and seemingly thought this "an employment discrimination case" (because that is the only kinds of cases she handles) and she blew the deadline for Plaintiff to file with the Missouri Commission on Human Rights.  And now Mr. Khazaeli has dawdled four (4) additional

months away – pushing Plaintiff's case up against the looming dismissal deadline and the statute of limitations on several of her causes of action against the defendants.  At some point, one has to consider that just perhaps these unfortunate (for Woods) outcomes are not at all coincidental and being done in bad faith by bad actors within the St. Louis legal apparatus against Plaintiff Woods.  By providing Plaintiff with lawyers who are either unable or unwilling to properly present this case for the Court's review, Plaintiff Woods is being denied her fundamental due process in this matter by such unimaginable folly.

Furthermore, matching the Plaintiff who was beaten and tortured by law enforcement at CJC/MSI (and at another location connected with CJC/MSI)  with an attorney whose majority professional background is working with and for law enforcement and who is every bit as authoritarian and dictatorial as a lawyer as law enforcement can be when treating suspects poorly  – seems like an intentional cravenly cruel thing to do to a victim of such *known* violence.   For the record, there is nothing remotely amusing about ANY of this to anyone – except to those with a fully dark soul.

5.)	And while  it is absolutely true that there exists an excessive force case against the City Jail (CJC & MSI) for Plaintiff Deborah Woods – the likes of which Mr. Khazaeli indicated is the most severe he has yet seen out of CJC and because, apparently, being a barely living and severely disabled victim and LIVING witness to the barbaric brutality and violence of CJC is more shocking and compelling to people's consciences than the 18 deceased detainees who have literally DIED in the Defendant's fatal jail(s) since 2020 – and thus, that claim exists in some legitimate form – with certain considerations required by Plaintiff.

Dead detainees tell no truths – which is why defendants are unlawfully attempting to place Plaintiff Woods within their custody again to ensure they finish the job next time and have another "dead detainee allegedly due to "suicide" <wink wink>

4

~ all as the St. Louis system of governance largely shrugs in unconscionable apathy to all of these extrajudicial murders.  To Plaintiff's mind – the State's ongoing bloodlust against Plaintiff Woods is the most pressing issue in the immediacy of NOW, this week, this month and this year.  Yet Mr. Khazaeli was quite clear on his stance (after being guided by Matthew Mahaffey on the matter), Mr. Khazaeli suddenly ran cover for the guilty and insisted: "If that happens, it happens. That's not my case and not my concern and there is no viable ADA case anywhere present in your case(s)."  Yet, attorney Khazaeli ALSO kept simultaneously insisting he would "try and back-door the ADA case" when the ADA case is the forerunner and one of the most prominent causes of action Plaintiff Woods has against the defendants.

Plaintiff Woods does not even understand what that term "backdoor the ADA" means – as it is certainly absent from any law book she has ever studied – and nor could Mr. Khazaeli define or describe what he meant by it – when pressed by Plaintiff Woods on this issue.  Yet Woods can arguably likely tell this Court what he meant by it with a fair degree of accuracy: "I will tell Woods this now to pacify her and to shut her up and then never bring it up again in any of my filings on her behalf precisely because it is very damaging to some of my good legal buddies here in the St. Louis Community."

That's a conflict and that is not allowed.

And while that may be his actual opinion to which he is entitled to that opinion; however,  it is not a widely shared legal opinion because National deaf and disability advocates and three (3) Chicago lawyers have said that there are at least four viable ADA claims under the umbrella of this Complaint.  But those professionals and lawyers understandably refuse to travel to St. Louis given the current status of your absolute bonkers violent crime situation there. (See: an innocent child, a high school hockey hero, ends up randomly shot dead just traveling on your highways  on an otherwise ordinary day in his life – due to the uncontained violence there in your City.

5

Accordingly, please do not expect Chicago lawyers and advocates to do what almost no one else wants to do either – which is travel to St. Louis given the current state of affairs there.)

But disregarding the truthfulness or merit of Mr. Khazaeli's legal opinion for the moment, Plaintiff is compelled to ask everyone reading this Motion an important question: "How does it feel when your heart grows so cold that depraved indifference to the forthcoming death of a woman defendants disabled in their former violence against her guides your process?" Saving Plaintiff's life from the extrajudicial violence and murderous medical "mishaps" of the defendant(s) is AND SHOULD BE ANY ASSIGNED LAWYER'S FIRST AND PRIMARY legal objective in this case. Even Paige Sparks understood THAT MUCH. And yet, Plaintiff appears to be the only one, besides God, who is actively working to preserve her life against a defendant known for their unchecked violence.

6.)    There also exists a technical legal and religious conflict related to any "excessive force" claim against the defendants which needs to be resolved FIRST with any counsel assigned to this case – one Mr. Khazaeli flatly refused to acknowledge and abide or even consider.  This was another source of contention between the parties herein (former attorney Khazaeli and client Woods.)  But like Paige Sparks before him – who thought she was assigned the case because it is an employment law case and she specializes in employment law, Mr. Khazaeli could only see an "excessive force" case because outside of immigration cases, excessive force cases are allegedly his other primary area of special focus in the law.

7.)    In contrast to this barbaric unchecked violence of the defendants, Plaintiff Woods states that while repeatedly trying to extrajudicially murder her inside that janky jail in the City of STL, incredibly – many miracles have happened for Woods along this journey, nevertheless. And it all has happened just as Scripture indicates: "What you meant for evil, God meant for Deborah's good" – meaning that even though

6

the defendants tried to harm and extrajudicially murder Plaintiff Deborah Woods, God is her full covering and He used this plotted evil and the life of Deborah Woods as a vessel to bring about a greater good and to save many lives  - all for the glory of God's just righteousness.

Because verily, verily I must tell you: often we must go to the ugliest places to meet the most beautiful people. Additionally true: the most impactful learning in this life is often found in a place most inhospitable for learning.  Because God in all of His infinite glory can make one grow and prosper no matter the calamity that caused the evil in the first instance.  So yes, Plaintiff Woods prays for and blesses those who continue to persecute her and who unjustly and lawlessly continue to seek her life and deprive her of her due process rights; because the more evil the defendants plot against her, the greater Plaintiff Woods is blessed by God.  And, simultaneously, the City of St. Louis and its agents and employees involved in this debacle are only storing up God's wrath upon themselves - the likes from which they will never recover.

Can you not understand that THIS is why no matter who ascends to positions of power there - your City will never improve much less prosper? Your own evil is the cause of your own demise.  "In arrogance the wicked hotly pursue the poor; thus, let them be caught in the schemes that they have devised." Psalm 10:2

8.)     Plaintiff Woods would like to believe that Mr. Khazaeli meant well; but meaning well and doing well are two totally different metrics with vastly divergent outcomes.  To be fair, attorney Khazaeli seems overwhelmed and overwrought, speaking generically (rather than with specificity) here; and regarding Woods' case - he was unwilling to accommodate certain safety protocols necessary to keep Plaintiff Woods safe from her abuser/stalker/identity thief.

And THAT lack of concern for Plaintiff Woods' life and safety simply cannot be abided in any moral arena claiming to be pro-life and one that allegedly values the dignity of human life.  No victim should have to risk their life because Mr. Khazaeli

7

finds a minor adjustment in obtaining medical records an untenable inconvenience. For the record, so, too, does the VICTIM of this travesty of justice find being forced to live this way "untenably inconvenient" ~ but that's just the way that it is and things will never be the same which is why certain safety protocols were put in place to protect Plaintiff Woods. Unfortunately, Mr. Khazaeli simply did not care and refused to even consider Plaintiff's safety as a priority.

9.)     Plaintiff informs this Court that she now suspects intentional sabotage of her case before this Court by certain bad actors within the St. Louis legal apparatus.  In support of this assertion she states that it is almost inconceivable as "merely accidental" or "oddly coincidental" that the first assigned lawyer blew the deadline with MCHR and now Mr. Khazaeili failed to perform for all four months he had this case assigned to him with now but a week left prior to the deadline to have filed an Amended Complaint in this matter; or, in the alternative and in all of his negligence, allow this Court to simply dismiss this case for failure to litigate.   Mr. Khazaeli had this case for four (4) full months and could not manage to draft an ethical attorney–client representation agreement applicable to a pro bono client in all of those long months from Summer into the end of Autumn  – so any forward progression on this case simply stalled for all of those months.

Yet conversely, and standing in sharp contrast is this: given the chance to "jump from the sinking Titanic ship he helped crash into the iceberg " Mr. Khazaeli had his Motion to Withdraw filed with this Court within hours of Plaintiff requesting that he withdraw from the case for failure to litigate the case.  How convenient that the one thing he can draft in a timely and competent manner for Woods is his Motion to Quit and do no work – after doing no work for the four months he had this case.  He ALSO had his side of the story circulating in the St. Louis legal gossip mill by early evening yesterday. That is untoward and highly suspect.

8

Any reasonable person can only draw one conclusion from this unfortunate set of facts and that is this: his departure at such a critical juncture in this litigation was likely pre-planned once he realized he fouled this case beyond all recognition - whether Plaintiff had the good sense to *finally* request him to depart or not.  How peculiarly convenient for the defendant(s) herein.

10.)    While there are many things Plaintiff Woods could drag into the sunlight as a powerful disinfectant regarding what transpired when and by who during the tenure of Mr. Khazaeli's handling of this case, Deborah chooses not to pursue acrimony but rather, she always chooses the path of living peacefully in the land with all.  For what purpose does it serve to  itemize a laundry list of bad lawyering  (even with compelling receipts proving same) when the other option is to show the man some grace and understand that Mr. Khazaeli was hopefully doing his best under a heavy workload and became clearly delinquent and overwhelmed in trying to ALSO handle Plaintiff Woods' complex pro bono case - just unfortunately all to Woods' grave detriment.

But Mr. Khazaeili is not being given unlimited grace by Plaintiff Woods - for people like him take kindness for weakness and then just take ugly advantage of same. So, the fountain of grace and goodwill ends where Mr. Khazaeili decided to blame Plaintiff Woods for all of his own failings.  That type of lawyer is all too common in St. Louis as Plaintiff Woods met several in her day working in that legal arena and the end result is never good - for the client(s).  But again - the lack of favorable and just outcomes for "the poor people" seems to be the point of this legal theatre of the macabre in St. Louis.

But rather than choose righteous indignation and attack Mr. Khazaeli in this Motion with *very unfortunate known truths about him which Plaintiff now knows*, Plaintiff instead chooses to simply pray:

God of hope, who brought love into this world, be the love that dwells between us in this matter.  God of hope, who brought peace into this world, be the peace that

9

dwells between us in this matter.  God of hope, who brought goodness, light and just righteousness into this world, be the just righteousness that dwells amid this matter herein.

And while it seems blindingly unfair for any new lawyer(s) assigned to this case to have such a limited window of time in which to get up to speed on such a complex case with many moving parts, Plaintiff Woods respectfully recommends that if that is the forward path chosen by this Court - perhaps a civil rights attorney WHO THEMSELVES are disabled and therefore more able to understand the 30+ year old Federal ADA law - as seemingly no able-bodied attorney in St. Louis does; and/or an experienced public interest law firm familiar with ADA discrimination and Civil Rights cases as well as personal injury and class actions would be more on point. For it seems - so far at least - no lawyer wants to argue the moral point or principle of how the laws absolutely DO also apply to everyone including the defendants herein  - or, at least they SHOULD.

But a legal case based on the facts, the truth and the law on the merits and the principle does not allow court appointed lawyers to plunder Plaintiff's personal injury pain for profit - so they are uninterested in pursuing the JUST cause of action in this matter. This system is so unconscionably broken as to let no one ever wonder why the McCloskeys chose to simply BUY their way out of the albatross that is the St. Louis criminal, legal system.  But the indigent are left being strangled by that same untenable albatross system until they are murdered, die from disability or the trauma of it all  - or simply quit in despair, disgust and discouragement.  Plaintiff Woods' case reflected and contrasted against the McCloskey case makes for a compelling docudrama and podcast regarding the current St. Louis legal system - that is for certain.

For Plaintiff Woods has not come before you to save only herself and her own life- but rather to save even one more person entitled to ADA protections from dying

10

in that fatal jail - AND to help save many lives by forcing the defendants to, at long last, become fully compliant with Federal law in their legal system in St. Louis Missouri in their non-ADA compliant jail, their non-ADA compliant judicial processes and their non-ADA compliant detainee transport system - to name just a few issues which require resolution herein.

For in the immortal words of Earnestine Mitchell, whom "this broken system" also "disappeared" or allegedly "suicided" in 2020 (but whose death the City does not count as having blood on its own hands regarding - when they absolutely do), and who looked at Plaintiff Woods one day in April 2020 and stated matter of factly:

"Oh, wow - you're legit fer real not one of us. You really don't have the monkey on your back (her metaphor for lifelong substance use disorder or illicit drug use/addiction) and they jammed you up over truthing. Oh, praise GOD - finally SOMEONE can help us in this pit!"

Taken aback by these words, Plaintiff Woods simply laughed. But then Ms. Mitchell ran to Woods with Bible in hand and turned to The Book of Esther and began quoting from it: "Did you ever stop to think that just maybe you were put in this very place, at this very time, with these very people to do the very thing God needs you to do - to be the voice for the voiceless and to save so many lives?" "For you are the only person who CAN DO THIS FOR US precisely because you aint us!"

Earnestine Mitchell would go on to "allegedly die of a heroin overdose" just 9 days later after this conversation and after providing Plaintiff Woods with critical documents relating to the crimes against humanity happening inside CJC/MSI against the detainees including maps and internal information regarding the Drug Diversion Program …

A part of Plaintiff Woods ministry is named after Earnestine and her courageous spirit in spite of so much trauma and adversity and Plaintiff Woods is determined to go forth and honor Earnestine's legacy of beauty and pure love for all no matter your

color, creed, age, disability, past, problems or inability to give anything in return. For in the course of human events, a person, out of sync with the evil of this fallen world, can – by the sheer goodness and light she creates by the way she lived her life – serve as the catalyst for great events and major systemic change.

11.)    Plaintiff endeavored to be very circumspect in her comments regarding Mr. Khazaeli in this Motion because in Plaintiff's world of just, righteous goodness – you never look good trying to make someone else look bad.  As such, Plaintiff Woods contained her remarks to matters of "irreconcilable differences" and "an overwhelmed and overwrought" Mr. Khazaeili who perhaps was in no position to take on such a complex case given his current workload in the first instance.  Plaintiff states this because his first comment to her in their August Zoom was: "I have no idea why the Court sent me your case. I just do not understand."  It seems to Plaintiff that if that were actually a true statement, Mr. Khazaeili would have ASKED THIS COURT to clarify that for him  – rather than "guess" and "ignore the case until it was on fire in terms of a hard deadline" and in the process attempt to trample and dismiss 90% of Plaintiff Woods' viable torts against the defendants.

Regardless of the WHY at this particular juncture, Christians are entitled to fully defend themselves when a vexing person is determined to continue to harm and slander them.  Plaintiff pleads with this Court to take what has been presented by Plaintiff herein as "sufficient evidence" of irreconcilable differences and a fundamentally bad match from the outset – especially given Mr. Khazaeili's fellowship and fraternity with law enforcement – and somehow find a new path forward without driving unnecessary increased acrimony between the now adverse parties herein.

12.)    Finally, Plaintiff Woods reminds this Court that she is exceedingly medically unwell.  Plaintiff may not even have the ability to continue to contend with this legal chicanery in St. Louis as she is entering palliative care – and then potentially hospice care thereafter.  What the legal remedy is for someone the defendants literally got

12

away with torturing and disabling to the point of death is – Plaintiff does not know. That is for legal minds far greater than her poverty pay grade to determine.

WHEREFORE, Plaintiff Woods finds herself at a loss as to what remedy to ask of this Court except to ask that any new pro bono legal counsel chosen by the Court be ALL of the following things:

1)	Able to hit the ground running on day 1 to properly prepare this case for review by this Court in short order;

2)	Willing to work pro bono on this kind of case with a disabled client with certain hardships and challenges that must be considered at times and work cooperatively towards compromise and regular forward progress in this matter;

3)	Not be a member or former member of law enforcement nor affiliated with law enforcement; and

4)	Be a lawyer sufficiently removed from the St. Louis legal system apparatus that they will not seek to work to protect the guilty in this matter – and against Plaintiff Woods' best interests.

Accordingly, Plaintiff can only pray that this Court intervenes to course-correct in order to render a just, fair, upright and righteous resolution of this case crisis and due process peril currently unraveling her case before this Court.  Plaintiff further prays that God may act to put wise eyes, and learned minds and honest hearts on this matter to ensure a just and fair path forward out of this unending legal albatross quagmire. In reverence and in hope, I urge you to act accordingly and with appropriate judicial fairness on this matter.

Finally, Plaintiff reasserts and reminds this Court that being reasonable and abiding by the law and their former agreed upon contracts – and not

perpetrating multiple frauds on the Court is always an option for defendants in order to bring about an abrupt cessation of all litigation related to all matters pertaining to Deborah Woods. Plaintiff Woods remains fully reasonable in her requests for relief and her sound recommendations for full resolution of all matters and restoration of all parties in short order.  If this Court is as tired of reading Motions on this matter as Plaintiff is in writing them, this Court does have the jurisdiction and the power to Order the lower Court to expeditiously honor their contract with Plaintiff Woods and resolve all pending matters in a way that is just, upright, fair and righteous guided by the laws defendants are supposed to be required to follow, too.  For as the favorite refrain of our current season right now chimes about:

"No one is above the law."

Or are they?...

Respectfully submitted,

_e-signature_*Deborah Woods*__
Deborah Woods, Pro Se
211 S. Clark Street #2195 Chicago IL 60690
Phone Number: 314-941-XXXX
Email: debwds2@aol.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the following was electronically filed with the EDMO Court in St. Louis MO on this 4th day of December 2024 by an assistant of Plaintiff Deborah Woods with copies sent via email to attorney Javad Khazaeli and attorney for the defendant(s) at the City Counselor's Office, St. Louis, MO.

__e-signature_*Deborah Woods*_____