## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DEBORAH WOODS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:24-cv-00868-MTS |
| ) | |
| CITY OF ST. LOUIS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff's Motion for Continual Sealing of All Medical Records, Doc. [38], as well as Plaintiff's Motion to "Alter/Amend" this Court's December 12, 2024, Order denying Plaintiff a third court-appointed attorney in this matter, Doc. [39]. For the reasons that follow, the Court will deny both of Plaintiff's Motions. However, the Court will grant Plaintiff leave to file a motion to withdraw Documents [34-1] and [34-2] from the public record.

\*

Plaintiff Deborah Woods, pro se, has sued various governmental actors under Title II of the Americans with Disabilities Act ("ADA"), asserting that, because of her disabilities and Defendants' failure to accommodate them, she has been excluded from participating in public services and programs. Doc. [40] at 1; *see* 42 U.S.C. § 12132. She also asserts claims under 42 U.S.C. § 1983, alleging that, while confined at the City Justice Center ("CJC"), St. Louis City officers subjected her to excessive force in violation of the United

States Constitution. *Id.* at 15. And she asserts a *Monell* clam against the City of St. Louis,[1] alleging that the City has been "deliberately indifferent" to "longstanding problems" at the CJC. *Id.* at 20–21.

### I.     Motion for Continual Sealing

On December 03, 2024, the Court scheduled an in-person hearing in this matter, and Plaintiff responded by filing a motion seeking leave to participate virtually. Doc. [34]. Plaintiff subsequently submitted documents to the Clerk of Court that she seemingly cited in her motion to substantiate medical information discussed within. Doc. [34 at 2] (describing Exhibits A and B and providing medical reasons why she should be allowed to attend the hearing remotely). Those documents were docketed as Doc. [34-1] and Doc. [34-2], respectively. The Court ultimately granted Plaintiff's motion and permitted the parties to appear virtually. Doc. [35].

Plaintiff now moves to have these documents, as well as any future medical records that she may submit to the Court, "continually and permanently sealed." Doc. [38] ¶ 5. Plaintiff has not submitted versions of the documents with targeted redactions covering particularly sensitive information. *See* E.D. Mo. L.R. 13.05(A)(4)(c). Instead, Plaintiff argues that the Court should fully seal her medical records to (1) comply with Health Insurance Portability and Accountability Act ("HIPAA") protections, (2) follow Public Access to Court Electronic Records ("PACER") guidelines, and (3) preserve her "right to privacy regarding her confidential medical records." *Id.* ¶ 4. She seeks to keep her

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

sensitive medical information confidential and out of the public domain. *Id.* ¶ 6. She further states that the publication of Docs. [34-1] and [34-2] has already caused her harm and, accordingly, she wishes to "minimize additional future harm." *Id.*

There is a "common-law right of access" to judicial records in civil proceedings. *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings." *Id.* Indeed, there is a presumption in favor of public access to judicial records, and it may "be overcome if the party seeking to keep the records under seal provides compelling reasons for doing so." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018). To that end, the decision of whether to seal a judicial record is "left to the sound discretion of the trial court . . . in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A court must balance "the interests served by the common-law right of access . . . against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT*, 709 F.3d at 1223 (*citing Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376 (8th Cir. 1990)). The Court addresses each of Plaintiff's asserted grounds for sealing in turn.

To begin, HIPAA does not apply to judicial proceedings and, thus, does not supply a basis for sealing Plaintiff's medical records. *See United States v. Mooring*, 4:19-cv-00617-SRC, 2021 WL 1313071, at *1 (E.D. Mo. Apr. 8, 2021). To be specific, HIPAA requires "covered entities" to protect a patient's medical information from disclosure. 42 U.S.C. § 1320d-2. Covered entities include health plans, healthcare clearinghouses, or

healthcare providers who transmit any health information electronically in connection with covered transactions, but courts and court proceedings are not included. *See* 45 C.F.R. § 164.103.

Similarly, the Court is not bound by the information PACER provides to its public users, whether it comes in the form of guidance, answers to frequently asked questions, or otherwise. Even so, the screenshot Plaintiff attaches to her motion as Exhibit A advises that "medical records are usually redacted or sealed to protect privacy, meaning they are not readily available on PACER."[2] Whatever this statement's source, it does not accurately describe the process or the requirements for sealing documents in the United States District Court for the Eastern District of Missouri. Under Local Rule 13.05, whether documents are sealed or redacted depends on whether a litigant moves to do so and whether he or she states sufficient grounds for the sealing. *See* E.D. Mo. L.R. 13.05(A)(4)(a). As discussed above, such decision-making depends on "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 597. It is therefore incorrect to say that a particular type of document is "usually" sealed or redacted because whether the Court does so will depend on the particular facts of the case and the arguments raised by the parties.

Lastly, regarding Plaintiff's "right to privacy regarding her confidential medical records," *Id.* ¶ 4, this Court has declined to hold that a litigant enjoys a standalone right to informational privacy. *See United States v. Hughes*, 4:19-cr-00687-SRC, 2022 WL 19209,

---

[2] In her motion, Plaintiff describes Exhibit A as "Pacer Guidance" and states that it is available in the public domain. Doc. [38] ¶ 2. Plaintiff does not provide any further information about the source of this Exhibit, nor does she list the website address where she found the information.

at *1–2 (E.D. Mo. Jan. 3, 2022) (declining to find an implied right to informational privacy); *see also Dillard v. O'Kelley*, 961 F.3d 1048, 1053–54 (8th Cir. 2020) (en banc) (reviewing Supreme Court and Eighth Circuit precedent and explaining that prior cases "were wrong" to recognize a right to informational privacy); *id.* at 1057 (Grasz, J., concurring) ("The constitutional right to informational privacy in the Eighth Circuit is dead.").

Although an individual certainly has a legitimate interest in maintaining privacy over their medical information, that interest can be outweighed "when the health information is material to the case." *Littlefield v. Am. Alt. Ins. Corp.*, 4:21-cv-304-SEP, 2022 WL 4355201, at *2 (E.D. Mo. Sept. 20, 2022).  In other words, when the information at issue is relevant to the ultimate resolution of the lawsuit, the public will have a strong interest in accessing that information so that they can "evaluate the reasonableness and fairness of [the proceeding]." *IDT*, 709 F.3d at 1222.  This is also true when the records at issue are directly relevant to the resolution of a particular motion.  *See Hughes*, 2022 WL 19209, at *2 (declining to seal medical information that was "material to [Plaintiff's] motion").  And, in general, when a plaintiff places a medical condition at issue, "it undermines his [or her] request that information related thereto be sealed." *Feinwachs v. Minn. Hosp. Ass'n.*, 0:11-cv-0008, 2018 WL 882808, at *3 (D. Minn. Feb. 13, 2018).

Here, the Court cannot grant the open-ended relief that Plaintiff seeks.  Local Rule 13.05 specifies the procedure that the Court must follow when sealing judicial records, and that procedure contemplates a case-by-case determination made after the Court reviews each document, or collection of documents, that a party wants to keep under seal.  *See* E.D.

Mo. L.R. 13.05(A)(4)(b)(ii) ("Movant must file under seal a complete copy of the subject document(s) . . . containing the material sought to be filed under seal.").

But even if the Court could do so, the Court would not enter such an order because the medical records the Plaintiff contemplates filing are, most likely, highly relevant to her underlying ADA claims. *See Wilson v. Preferred Fam. Healthcare*, 2:21-cv-00079-RLW, 2022 WL 2157033, at *2 (E.D. Mo. June 15, 2022) (holding, in an ADA case, that plaintiff's medical history "is indisputably relevant to the claims at issue"). Indeed, the two medically related documents currently in the record describe—albeit briefly—medical conditions and accommodations mentioned in Plaintiff's initial Complaint. *See, e.g.*, Doc. [1] ¶¶ 1, 46. The documents were also relevant to the relief Plaintiff requested in her corresponding motion. Doc. [34]. Therefore, the Court cannot hold that Plaintiff's privacy interest outweighs "the right of the public to access material filed with the Court" at this time, and the Court will deny Plaintiff's motion to seal. E.D. Mo. L.R. 13.05(A)(2).[3]

Nevertheless, the Court is mindful of Plaintiff's representation that, had she known about the requirements of Local Rule 13.05, "she obviously would have complied with any contemporaneous filing requirements to ensure such records will not be shared and published." Doc. [38] ¶ 6. The Court will therefore give Plaintiff leave to file a Motion to Withdraw Documents [34-1] and [34-2] from the record to the extent she did not intend

---

[3] The Court observes, however, that Doc. [34-1] contains Plaintiff's date of birth, and Local Rule 5.2 requires redactions to be applied such that "only the year of birth" is listed in the filing. E.D. Mo. L.R. 5.2(A)(3) (also requiring parties to redact all but the last four digits of both social security numbers and financial account numbers, the home addresses of non-parties, and the names of minor children). But, "[t]he responsibility for redaction rests solely with the filing party." *Id.* 5.2(B).

- 6 -

them to become publicly accessible.  *Cf.* E.D. Mo. L.R. 13.05(A)(4)(g) (permitting a party 14 days to withdraw the relevant documents after entry of an order denying sealing).

## II. Motion to Alter/Amend

On December 12, 2024, the Court entered an order denying Plaintiff's Motion seeking a third court-appointed attorney.  Doc. [37].  Both of Plaintiff's appointed lawyers subsequently moved to withdraw from her case.  *Compare* Doc. [11] (moving to withdraw and citing irreconcilable differences that made continued representation impractical and unreasonably difficult), *with* Doc. [29] (withdrawing in order to comply with Plaintiff's affirmative request that he do so and, in addition, citing irreconcilable differences).  After granting the most recent motion to withdraw, the Court declined to appoint additional counsel.  Doc. [37].

Plaintiff asks the Court to reconsider because, at the December hearing, Plaintiff was not given a full opportunity to elaborate on "the totality of the problems" that had arisen between her and her most recent court-appointed counsel.  Doc. [39] ¶ 8.  Plaintiff also argues that the Court erred when it observed that Plaintiff has demonstrated her ability to litigate this action, especially at the pleading stage.  Doc. [39] ¶ 25.  Plaintiff explains that, because of "neurological and cognitive disabilities," she uses a remote assistant to prepare filings in this matter.  She asserts that, due to her disabilities, "denying assistance of counsel to Plaintiff is, in fact, denying equal and meaningful access to the judicial process."[4]  *Id.*

---

[4] Plaintiff also moved, in the alternative, for an additional 45-days to file her opposition or an amended complaint in response to Defendant City of St. Louis's Motion to Dismiss.  Doc. [39]

Upon consideration of Plaintiff's arguments, the Court declines to change its ruling. This is a civil matter in which there is neither a statutory nor constitutional right to appointed counsel. *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). Additionally, the Local Rules state that "[a] self-represented litigant who receives appointed counsel in a civil matter will, absent extraordinary circumstances, not be entitled to the services of substitute or other appointed attorneys." E.D. Mo. L.R. 12.01(I).

Out of an abundance of caution, and after considering the severity of Plaintiff's claims, the City's reportedly abysmal record with respect to detainees at the CJC,[5] and Plaintiff's representations concerning her physical and cognitive disabilities, the Court appointed Plaintiff a second lawyer. But *both* attorneys have now withdrawn from this case citing irreconcilable differences with Plaintiff, and the Court subsequently agreed with both counsel that those differences warranted withdrawal. Plaintiff has been unable to work with two attorneys; the Court does not believe that appointing counsel a third time will be the proverbial charm. In addition, the Court has reviewed the present circumstances

---

¶ 25.  She sought an extension from her initial December 26, 2024, deadline because her remote assistant would be away for the holidays and, without his or her assistance, "Plaintiff has no ability, due to her neurological deficits from [a traumatic brain injury], to file a coherent sentence – much less a proper Amended Complaint by this Court's mandated deadline."  This request is moot, however, because Plaintiff complied with the initial deadline and filed an Amended Complaint on December 26, 2024, after all.  Doc. [40].

[5] At least one news outlet has reported that, since 2020, eighteen detainees have died while incarcerated at the CJC. *See* Lacretia Wimbley, *18 detainees have died at the St. Louis city jail since 2020—more than previously reported*, ST. LOUIS PUBLIC RADIO (Nov. 18, 2024, 5:00am), https://www.stlpr.org/law-order/2024-11-18/18-jail-deaths-st-louis-city-justice-center-since-2020.  Of course, the Court takes judicial notice of this news article only "to indicate what [is] in the public realm at [this] time" and not for the truth of the article's contents. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. All. Cap. Mgmt.*, 435 F.3d 396, 401 n.15 (3rd Cir. 2006)).

- 9 -

and does not find that they are "extraordinary" such that Plaintiff should receive additional counsel at this time. E.D. Mo. L.R. 12.01(I).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Continual Sealing of All Medical Records, Doc. [38], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff may file a motion to withdraw Doc. [34-1] and Doc. [34-2] from the record **no later than January 21, 2025**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Alter/Amend Court's Ruling, Doc. [39], is **DENIED**.

Dated this 7th day of January 2025.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE