UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEBORAH WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:24-cv-00868-MTS |
| | ) |
| CITY OF ST. LOUIS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon initial review of Plaintiff Deborah Woods' Amended Complaint, Doc. [40], which asserts new claims under 42 U.S.C. § 1983 against new defendants. *See* 28 U.S.C. § 1915(e)(2). Also before the Court is the City of St. Louis's Motion to Dismiss for failure to state a claim. Doc. [43]. Plaintiff opposes the Motion, Doc. [49], and the City has filed its Reply in Support, Doc. [50].[1] For the reasons that follow, the Court finds that each of Plaintiff's claims must be dismissed, at least as pleaded. However, the Court will dismiss the operative complaint and grant Plaintiff leave to file a Second Amended Complaint to reassert her claims. *See, e.g.*, *Phillips v. Ill. Dep't of Fin. and Pro. Regul.*, 718 F. App'x 433, 436 (7th Cir. 2018) (per curiam) (joined by Barrett, J.) ("When faced with a complaint from a pro se litigant that [is] 'unclear rather than patently without

---

[1] Plaintiff also filed an Amended Response in Opposition, Doc. [51], as well as a Surreply, Doc. [52]. Because Plaintiff did not seek leave from the Court to file either of these additional documents, the Court has not considered them. *See* E.D. Mo. L.R. 4.01(C) (requiring leave of Court before filing additional memoranda); *see also Martinez v. Union Pac. R. Co.*, 82 F.3d 223, 227 (8th Cir. 1996) (noting the Court of Appeals for the Eighth Circuit "has upheld strict compliance by trial courts with their local rules").

merit,' the judge should [provide] an opportunity to amend it." (quoting *Williams v. Wahner*, 731 F.3d 731, 734 (7th Cir. 2013))).

## Legal Standard

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed without full payment of the filing fee if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represent litigants are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to challenge the legal sufficiency of a plaintiff's complaint and move to dismiss a claim for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, the Court assumes a complaint's factual allegations are true and makes all reasonable inferences in favor of the nonmoving party, but the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The complaint must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility of a complaint turns on whether the facts alleged allow a court to "draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## Background

Plaintiff Deborah Woods, pro se, asserts claims arising out of her incarceration at the St. Louis City Justice Center ("CJC") as well as the Medium Security Institution ("MSI").[2] She alleges several instances where individual officers and city contractors subjected her to unconstitutionally excessive force. Doc. [40] ¶ 15. First, Plaintiff states that, on or about February 13, 2020, she had a seizure in her cell, which unnamed jail officers "misdiagnosed as an illicit drug overdose." *Id.* ¶ 16. Without provocation, the unnamed "[d]efendants yanked her from her cell bed, body-slammed her onto the floor 'flatbacked' and proceeded to punch, repeatedly dropkick and hit [her] while doing repeated 'sternum rubs' in order to cause her to suffer additional pain." *Id.* In addition, the "defendants" grabbed her by her ankles and "dragged [her] down approximately 15 metal stairs . . . with her head and neck hitting every step along the way." *Id.* This caused her to suffer a traumatic brain injury, permanent hearing loss, injuries to her head, neck, and back, and a severe injury to her left knee, including what was "subsequently diagnosed as a torn meniscus, torn ACL, torn PCL, and a shattered

---

[2] Taking judicial notice of Plaintiff's state-court criminal proceedings, *see Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (explaining that courts "may take judicial notice of judicial opinions and public records"), it appears that Plaintiff was held as a pre-trial detainee on a charge of Tampering with a Judicial Officer as set forth in Missouri Revised Statutes § 575.095, *see State v. Woods*, 2022-CR00403-01. Plaintiff's state-court criminal proceedings are still pending.

kneecap." *Id.* Since that incident, Plaintiff has had to use a wheelchair to move about. *Id.* She asserts that "all of these injuries went untreated" during her detention. *Id.*

Second, Plaintiff alleges that she was "taken to an abandoned corner of the medical ward," where she was "intentionally" assaulted with excessive force in the form of an unnecessary sternum rub and a choke hold, *id.* ¶ 17, as well as threats of "needles of illicit drugs" and "forced medication which was not medically necessary," *id.* ¶ 18. She also alleges that she was neglected in the ward "for 30 additional days" and had "no access to food . . . and limited access to water." *Id.* During her confinement, Plaintiff spent seven days in the Intensive Care Unit at Saint Louis University Hospital ("SLU Hospital") where she received IV antibiotics as treatment for "sepsis" and "septic shock." *Id.* Plaintiff asserts that she was assaulted while being transported from SLU Hospital back to jail. *Id.* She does not identify or otherwise describe her assailants except that they were a group of male officers. *Id.* As a result, she "suffered fractured teeth . . . and additional head, neck, and back injuries." *Id.*

Plaintiff asserts that the City of St. Louis should be held liable for her treatment while in custody because the repeated instances of excessive force arose out of the City's deliberate indifference to "violence perpetrated by staff at [the] CJC," exhibited by the CJC's "infamous" reputation incurred because of the 18 detainee deaths that have occurred there since 2020. *Id.* ¶ 34. She alleges that "the City of St. Louis has failed and refused to remedy . . . violence perpetrated by staff at [the] CJC," explaining that "jail activist groups" have tried to draw attention to the issue. *Id.* ¶ 35. And she alleges that these issues caused the termination of former Corrections Commissioner, Jennifer Clemmons Abdullah. *Id.* ¶ 36. According to Plaintiff, "[a]ll of this speaks of systemic violence and the resulting deaths at [CJC] indicate that . . . the City of St. Louis has been, for years, deliberately indifferent."

Lastly, Plaintiff alleges that she was deprived of certain services, programs, and necessary accommodations because of her disabilities. She asserts that she was repeatedly denied access to the CJC law library because her wheelchair did not "fit" inside. *Id.* ¶ 19. She also alleges that she was "refused access to religious services and food/meal trays at MSI when she could no longer walk to those destinations . . . and was told that unless she walked to those services, those services were not coming to her." *Id.* Plaintiff asserts that she "consequently missed most meal trays and lost nearly 40 lbs. during her detention," and the "ER Department" subsequently observed that she was "extremely dehydrated and suffering from malnourishment." *Id.* Moreover, Plaintiff asserts that "plaintiff was refused access to an ADA-compliant safe shower at CJC." *Id.* Accordingly, Plaintiff "was refused a shower each day and suffered from extreme poor hygiene." CJC staff also denied Plaintiff "all personal hygiene items . . . [causing] an untreated oral infection causing tooth decay and tooth loss." *Id.* Plaintiff was released from City custody on her own recognizance in April 2020.

In response to the above, Plaintiff asserts three different counts, two under § 1983 for excessive force and municipal liability and another for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Plaintiff brings suit against (1) the City of St. Louis, (2) a total of six John and Jane Doe defendants, identified as police officers, sheriff deputies, CJC correctional officers, and Corizon Health employees, named in their individual capacities, (3) Dale Glass, former Commissioner of Corrections, in his official capacity, (4) Tammy Ross, acting Commissioner, in her official capacity, (5) former City Sherrif Vernon Betts in his individual and official capacities, and (6) Corizon Health. The City of St. Louis now moves to dismiss all claims that Plaintiff has asserted against it, including Plaintiff's official-capacity claims against City officials. Doc. [43]. Because the Court previously

granted Plaintiff leave to proceed in this matter without prepaying fees or costs, Doc. [8], the Court also reviews Plaintiff's individual-capacity claims under 28 U.S.C. § 1915(e)(2).

## Discussion

**A. Section 1983**

Section 1983 provides a federal cause of action against officials acting under color of state law for damages caused by violations of federal constitutional or statutory rights. 42 U.S.C. § 1983. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). In other words, an individual officer "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Relatedly, a municipality can be held liable under § 1983, but only to the extent "the municipality *itself* causes the constitutional violation at issue." *Rusness v. Becker County*, 31 F.4th 606, 617 (8th Cir. 2022) (quoting *City of Canton v. Harris*, 489, U.S. 378, 385 (1989)). Thus, municipal liability cannot be premised on a theory of vicarious liability such as *respondeat superior*. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978).

1. Individual Capacity Claims

As discussed above, Plaintiff alleges unconstitutional misconduct on the part of multiple unnamed individuals as well as former City Sherrif Vernon Betts. Her allegations are insufficient because they are either wholly conclusory or lack the level of specificity required to state a plausible claim under § 1983. Against the unnamed defendants, Plaintiff alleges wrongdoing against an unquantified class of "defendants," identified generally as "agents and employees of Defendant City of St. Louis at the City Justice Center, Defendants of [the St. Louis Metropolitan Police Department] and Sheriff Betts [sic] Office and agents and employees of Corizon." *See* Doc. [40] ¶ 16. Even when narrating specific instances of alleged

excessive force and, in some instances, deliberate indifference to unconstitutional conditions of confinement, *see, e.g.*, *id.* ¶ 19 (alleging limited access to food trays, showers, and hygiene products), Plaintiff's allegations pertain only to a generalized group of "defendants," *id.* ¶¶ 17–19.

These allegations do not pass initial review because, "[t]o state a § 1983 claim for relief, Plaintiff must allege with specificity what *each defendant* did to violate [her] rights." *Moon v. Boyd*, 727 F. Supp. 3d 829, 850 (E.D. Mo. 2024); *see also Potter v. Lineback*, 4:18-cv-235-AGF, 2018 WL 2335762, at *4 (E.D. Mo. May 23, 2018) (dismissing pro se complaint on initial review where "plaintiff lump[ed] numerous defendants together and state[d], in vague and conclusory terms, that they all violated his rights."); *Storm v. Warden*, 2:25-cv-1483-DJC-ACP, 2025 WL 1695034, at *3 (E.D. Cal. June 17, 2025) ("This means that plaintiff should identify *each* Doe defendant separately (e.g., Doe 1, Doe 2, etc.) and explain what *each* individual did to violate [her] rights."). Relatedly, Plaintiff's sole allegation of Sherrif Vernon Betts' wrongdoing—that Plaintiff was "assaulted with excessive force" in the CJC medical ward at his behest—is wholly conclusory and devoid of any factual allegations allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf*, 619 F.3d at 873. Accordingly, the Court will dismiss Plaintiff's Amended Complaint with respect to her § 1983 claims against Defendants in their individual capacities.

2. Official Capacity & Municipal Liability Claims

Plaintiff's § 1983 claims against the City of St. Louis do not fare better. In the first place, each of Plaintiff's official-capacity claims redound to the City of St. Louis because a suit brought against a government official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Mich. Dep't*

*of State Police*, 491 U.S. 58, 71 (1989).  That is, the real party in interest in an official-capacity suit is not the named official but the governmental entity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  To hold the City of St. Louis liable under § 1983, Plaintiff's alleged constitutional violations must have "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  The same is true for Plaintiff's claims against Corizon Health, the healthcare provider at the respective City jails.  Where, as here, a corporation acts under color of state law, it "will not be liable on a *respondeat superior* theory."  *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).  Rather, to support a claim against such a corporation, Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury."  *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Here, Plaintiff makes no allegation that the alleged violations of her constitutional rights were caused by an official policy, *see Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024) (explaining that municipal liability based on an official policy requires allegations of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters"), nor does Plaintiff allege a municipal failure to train or supervise, *see S.M. v. Lincoln County*, 874 F.3d 581, (8th Cir. 2017) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.").  Further, Plaintiff's allegations do not support the existence of an unconstitutional unofficial custom.  To do so, a complaint must set forth factual allegations "plausibly suggesting '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the [municipality's] employees; (2) deliberate indifference to or tacit authorization of such conduct

- 8 -

by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) an injury by acts pursuant to the [municipality's] custom.'" *Id.* (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022)).

With respect to the existence of a persistent pattern of unconstitutional misconduct, Plaintiff invokes the City's woeful reputation concerning the treatment of CJC detainees, *see* Doc. [40] ¶ 34 (pointing out that at least 18 detainees have died while in custody since 2020), but her allegations are not specific enough to permit the Court plausibly to infer that a persistent pattern of misconduct was the moving force behind the constitutional violations that she allegedly experienced. *See Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (explaining that a "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged" (internal quotations omitted)). This generally "requires similarity and specificity" between prior instances of misconduct and the conduct challenged by plaintiff such that the prior instances "point to the specific violation at issue, be sufficiently numerous, and provide context that would show a pattern." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (quoting *Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)).

Because of the lack of factual allegations on this score, the Court cannot "plausibly infer more than the mere possibility" that either the City or Corizon Health were deliberately indifferent to widespread misconduct that proximately caused the alleged constitutional violations at issue here. *Id.* at 897. To find otherwise would subject these Defendants to liability merely based on the actions of their employees, and the Court cannot do so. *See Brewington v. Keener*, 902 F.3d 796, 801 ("*Respondeat superior* or vicarious liability will not attach under § 1983."). Accordingly, the Court will grant the City's Motion to Dismiss

Plaintiff's Amended Complaint with respect to her § 1983 claims against the City, its officials in their official capacities, and Corizon Health, its contractor acting under color of law.

### B. ADA

The City also moves to dismiss Plaintiff's ADA claim, arguing that she is barred on mootness grounds from acquiring injunctive relief and she cannot recover monetary damages because the factual allegations in her Amended Complaint do not support a plausible inference that the City was deliberately indifferent to the violations that she alleges. Doc. [44] at 9–12. These arguments are well taken. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Prisons generally fall within the statutory definition of "public entity," *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998), and the statute's protections encompass "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government," *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998). Title II claims are cognizable against and provide redress "only from public entities." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). To state a plausible claim under Title II, a detainee-plaintiff must allege that he or she "is a qualified individual with a disability" who was "excluded from participation in or denied the benefits of the jail's services, programs, or activities, or was otherwise subjected to discrimination by the jail," and "such exclusion, denial of benefits, or other discrimination was by reason of his [or her] disability." *Id.*

Plaintiff's claims for injunctive relief are easily dispensed with on mootness grounds because Plaintiff was released from confinement in April 2020. Doc. [40] ¶ 21. "An inmate's

- 10 -

claims for . . . injunctive relief to improve prove prison conditions [are] moot when . . . [she is] no longer subject to those conditions." *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (finding mootness despite plaintiff's arguments that he was "likely to be subject to the same conditions" sometime in the future); *cf. Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) ("[A] federal court has no authority to give opinions upon moot questions."). Accordingly, the Court cannot grant her the injunctive relief she seeks. Doc. [40] at 27 (seeking an injunction requiring the CJC to become "fully ADA-compliant").[3]

By contrast, it is possible for Plaintiff to recover compensatory damages as long as she makes a sufficient showing of discriminatory intent, specifically by demonstrating that City officials were deliberately indifferent to violations of her federally protected rights.[4] *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (applying the deliberate indifference standard and explaining that deliberate indifference in this context "does not require a showing of personal ill will or animosity . . . but rather can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in

---

[3] Plaintiff also seeks an order mandating certain ADA accommodations in this legal proceeding as well as her pending state-court criminal proceeding. Doc. [40] at 26. The Court cannot grant her the relief she seeks. To start, federal courts are not subject to Title II of the ADA, *Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) ("Title II of the ADA is not applicable to the federal government."), although this Court nevertheless strives to provide reasonable accommodations when appropriate, *see Courthouse Accessibility Information*, United States District Court for the Easten District of Missouri: Court Business, https://www.moed.uscourts.gov/courthouse-accessibility-information (last visited July 22, 2025). Second, even if the Court could intervene in Plaintiff's state-court criminal proceeding and impose specific procedural requirements, *see Ogala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2023) (describing the "strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff"), the Court would not do so here because Plaintiff's sparse allegations in this regard do not plausibly show that she has been denied "equal and meaningful access to the judicial process." Doc. [40] ¶ 49. Instead, Plaintiff's allegations on their face demonstrate that she has simply been denied certain *preferred* accommodations, *id.* ¶ 46 (seeking the benefit of using "her own amplified home hearing equipment for all Court hearings"), which the ADA does not guarantee. *See E.T. v. Paxton*, 19 F.4th 760, 767 (5th Cir. 2021) ("[P]laintiffs are not entitled to their preferred accommodation, but only a reasonable accommodation.").

[4] Punitive damages, however, are unavailable under Title II of the ADA. *Compare Meagley*, 639 F.3d at 390, *with* Doc. [40] at 28 (seeking punitive damages).

a violation of federally protected rights"). Much like § 1983, vicarious liability based on deliberately indifferent conduct of City employees is unavailable in this context. *See Ingram v. Kubik*, 30 F.4th 1241, 1257 (11th Cir. 2022) (finding Title II does not support vicarious liability); *accord Jones v. City of Detroit*, 20 F.4th 1117, 1118 (6th Cir. 2021). Accordingly, "Plaintiff must plead and ultimately prove that [the City of St. Louis] (through an appropriate official) had knowledge of violations of the ADA . . . and was deliberately indifferent to Plaintiff's rights." *Casey v. Cooper*, 4:23-cv-206-JMB, 2024 WL 1856176, at *5 (E.D. Mo. Apr. 29, 2024).

Here, Plaintiff's allegations that "Defendants . . . caused her disabilities and therefore had knowledge of her disabilities . . . but nevertheless denied her ADA accommodations," Doc. [40] ¶ 49, are too generalized and conclusory and are thus "not entitled to be assumed true." *Core & Main, LP, v. McCabe*, 62 F.4th 414, 423 (8th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 681). The factual allegations that she does put forth fail to establish the *City's* deliberate indifference; rather, they pertain only to the conduct of unnamed and unquantified jail employees. *See* Doc. [40] ¶ 19 (alleging that "defendants" denied her access to the law library, food trays, and religious services because her wheelchair would not fit inside or because she could not otherwise walk to the respective locations). Because *respondeat superior* liability is unavailable, these allegations are insufficient as pleaded. *Jones*, 20 F.4th at 1118.

Without factual allegations plausibly showing that an appropriate official had notice of violations to Plaintiff's rights under the ADA, Plaintiff fails to make a sufficient showing that the City was deliberately indifferent to her rights. *See Roberts v. City of Omaha*, 723 F.3d 966, 976 (8th Cir. 2013) (finding no deliberate indifference in the context of a claim for failure to train under the ADA where the city lacked notice of violations to plaintiff's rights); *see also,*

*e.g.*, *Ramos v. Monteiro*, 2:06-cv-00832-GAF-JEM, 2008 WL 4184644, at *25 (C.D. Cal. Sep. 8, 2008) (finding plaintiff's ADA-related allegations sufficient where he "adequately alleged that he put prison officials with authority to act on notice of his need [for accommodations]"). Therefore, the Court must grant the City of St. Louis' Motion and dismiss Plaintiff's Amended Complaint as to her ADA claim because the allegations therein fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis' Motion to Dismiss Plaintiff's Amended Complaint, Doc. [43], is **GRANTED**. Fed. R. Civ. P. 12(b)(6).

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against the remaining Defendants are **DISMISSED** for failure to "state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(ii).

**IT IS FINALLY ORDERED** that Plaintiff has leave to file, **no later than forty-five (45) days from the date of this Memorandum and Order**, a Second Amended Complaint that sufficiently states a claim for relief. Failure to do so may result in dismissal of this action without further notice.

Dated this 25th day of July 2025.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE